UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO. 05-11734-RCL

| | |
|---|---|
| ROBERT LUBOLD, JR. | ) |
|     Plaintiff | ) |
| | ) |
| V. | ) |
| | ) |
| METROPOLITAN LIFE INSURANCE | ) |
|  COMPANY | ) |
| WALGREEN INCOME PROTECTION PLAN | ) |
|     FOR STORE MANAGERS | ) |
| WALGREEN CO. | ) |
|     Defendants | ) |

**FIRST AMENDED COMPLAINT WITH JURY DEMAND**

**Parties**

1.  Plaintiff is Robert Lubold, Jr. ("Mr. Lubold") an individual having a usual place of residence at Sandwich, Barnstable County, Massachusetts.

2.  Defendant is Metropolitan Life Insurance Company ("MetLife") an insurance subsidiary of Metropolitan Life, Inc., One Madison Avenue, New York, New York, doing business in the Commonwealth of Massachusetts, and the insurer of the Walgreen Income Protection Plan for Store Managers.

3.  Defendant is Walgreen Income Protection Plan for Storage Managers("LTD Plan"), an employee benefit plan, having a place of business at 1417 Lake Cook Road, Deerfield, Illinois.

1

4. Defendant is Walgreen Co., an Illinois corporation, having a place of business at 1417 Lake Cook Road, Deerfield, Illinois. Walgreen Co., is the Plan Administrator and Plan Sponsor of the LTD Plan.

### Jurisdiction and Venue

5. This Court has original jurisdiction for claims for benefits arising under 29 U.S.C. § 1132.

6. Venue is proper before this Court, because the plaintiff resides in the eastern district of Massachusetts.

### Facts Common to All Counts

7. At all times material hereto, Mr. Lubold had been employed as a full time employee and store manager for Walgreen Co., or one of its subsidiaries.

8. At all times relevant hereto, Ms. Lubold was a beneficiary under the LTD Plan.

9. The LTD Plan is an "employee welfare benefit plan," as defined by ERISA, 29 U.S.C. § 1002(1), and may be sued under ERISA as an entity, pursuant to 29 U.S.C. § 1132(d)(1).

10. MetLife insures the Plan and is jointly liable for payment of benefits under the LTD Plan.

11. Mr. Lubold is a "participant" in the LTD Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

12. Mr. Lubold was employed as a store manager at Walgreen Co., within the Commonwealth of Massachusetts.

13. On or about February 6, 2002, Mr. Lubold was driving his automobile on Route 3 in or around Marshfield, Massachusetts, when his car was rear ended by another automobile traveling at a high rate of speed.

14. As a result of that collision, Mr. Lubold suffered a traumatic brain injury.

15. In or about May 2002, and in order to evaluate Mr. Lubold's claim, MetLife retained the services of Dr. Kenneth G. Busch, MD of Chicago, Illinois, who conducted a record review of certain of Mr. Lubold's medical records and found Mr. Lubold to be significantly occupationally impaired.

16. At all times material hereto, and since at least March 1, 2002, Mr. Lubold has been "totally disabled" within the meaning of the terms of the LTD Plan, and has been entitled under the LTD Plan to be paid both short-term disability and long-term disability benefits, and continues to be disabled to date.

17. For a period of time, commencing on or about March 1, 2002 until on or about October 1, 2003, MetLife paid disability benefits to Mr. Lubold.

18. After MetLife terminated Mr. Lubold's benefit payments, and in order to support its benefit denial, MetLife relied on the opinion of Dr. Reginald Givens, MD, who performed a cursory and limited record review, and without reasonable explanation rejected the opinions of Mr. Lubold's treating physician opinions regarding his significant occupational impairment, and that of Dr. Busch.

19. MetLife retained Dr. Givens through Network Medical Review - Elite Physicians of Rockford, Illinois ("NMR"), an organization owned and controlled by Dr. Robert Porter, MD. NMR regularly reviews ERISA disability claims on behalf of insurers such as Fortis - Assurant, MetLife Disability, Sun Life, Liberty Life Assurance Company of Boston and others.

20. NMR is paid substantial sums of money each year by insurers, including Fortis-Assurant, MetLife Disability, Sun Life, Liberty Life Assurance Company of Boston and others.

21. NMR advises its reviewing doctor not to use certain language in writing disability opinions.

22. Dr. Givens was not an "independent medical reviewer."

23. Under the LTD Plan, Mr. Lubold was required to seek benefits from the SSA, or the LTD Plan would estimate the benefits that he might expect to receive and reduce that sum from his monthly benefit payment.

24. The United States Social Security Administration ("SSA"), by a written decision containing specific findings of fact and rulings of law dated October 29, 2004 by Administrative Law Judge, J. Alan Mackay, found that Mr. Lubold had been disabled and remains disabled from gainful employment effective March 1, 2002.

25. Mr. Lubold timely filed an appeal of the benefits denial which was received by MetLife on June 28, 2005.

26. Mr. Lubold has exhausted his administrative remedies under the LTD Plan, insurance policy and under ERISA, because the LTD Plan and MetLife have failed to render a decision no later than forty five (45) days after MetLife received Mr. Lubold's most recent appeal.

27. To the extent that MetLife had been granted discretionary authority under the Plan, both the Plan and MetLife abused that discretion, for many reasons, including its failure to render a decision no later than forty five (45) days after receipt of the appeal, and in accordance with the United States Secretary of Labor regulations set forth at 29 C.F.R. § 2560.503-1.

## Count I

### Benefits Due From MetLife and the Plan under ERISA, 29 U.S.C.§ 1132

28. Mr. Lubold realleges paragraphs 1 through 27 and incorporates the same by reference as if fully set forth herein again.

29. As the *de facto* plan administrator and benefit payor, MetLife is operating under a conflict of interest, and to the extent that MetLife contends that its decision to terminate benefits under the discretionary standard of review, that contention must be denied, and MetLife's decision must be reviewed under a *de novo* standard of review.

30. To the extent that MetLife had been granted discretionary authority under the LTD Plan, both MetLife and the Plan abused that discretion, for reasons including, the failure to render a decision no later than forty five (45) days after receipt of the appeal, and in accordance with the United States Department of Labor regulations set forth at 29 C.F.R. § 2560.503-1, and engaging in an inherently unfair claim process.

31. MetLife's decision to terminate Mr. Lubold's benefits under the LTD Plan are wrongful whether determined under *de novo* standard, or the arbitrary and capricious standard, or the heightened scrutiny standard of review.

32. Mr. Lubold fulfilled all of the requirements for obtaining benefits under the LTD Plan and the insurance policy of MetLife.

33. As a result of MetLife's and the LTD Plan's refusal and failure to pay to Mr. Lubold disability benefits provided to him and to those participants who are totally disabled, Mr. Lubold is entitled to relief against MetLife and the LTD Plan to recover benefits due to him under the terms of the LTD Plan and insurance policy, to enforce his rights to benefits under the Plan and to clarify his rights to future benefits under the LTD Plan and insurance policy, pursuant to 29 U.S.C. § 1132 (a).

## Count II

### Breach of Contract Against MetLife

34. Mr. Lubold realleges paragraphs 1 through 33 and incorporates the same by reference as if fully set forth herein again.

35. Mr. Lubold is a direct, or intended third party beneficiary of an insurance contract between Walgreen Co., and MetLife.

36. MetLife breached that insurance contract, and caused Mr. Lubold to suffer damages.

## Count III

### Failure to Timely Provide Plan Documents

37. Mr. Lubold realleges paragraphs 1 through 36 and incorporates the same by reference as if fully set forth herein again.

38. By letter dated January 26, 2004, counsel to Mr. Lubold made written request for the Summary Plan Description and Plan documents relating to the LTD Plan. A duplicate letter was sent to MetLife.

39. MetLife refused to produce documents even though it controlled administration of the Plan. To date, it appears that MetLife has not produced all "other instruments under which the plan is operated," including the *Met Procedures and Policy for Processing Claim*.

40. Pursuant to 29 U.S.C. § 1024(b)(4) the plan administrator shall, whether *de facto* or actual, upon written request of a participant, furnish a copy of the "other instruments under which the plan is operated," and a summary plan description.

41. Both Walgreen Co., and MetLife failed to provide the requested documents within thirty days, are a subject to a penalty of as described in 29 U.S.C. § 1132( c)(1) of up to $110/per day beginning on the thirty-first (31st) day.

WHEREFORE, plaintiff Robert Lubold, Jr., demands relief and judgment, jointly and severally, against the defendants as follows:

1. In an amount of damages to be determined by this Court, or jury, plus pre-judgment interest, post-judgment interest, costs and reasonable attorneys' fees allowed by statute or otherwise.

2. Injunctive relief declaring the rights and duties of the plaintiff and defendants with respect to past benefits owed to the plaintiff, and future benefits to be paid to the plaintiff.

3. For an order precluding a remand of this matter for further determination by the defendants regarding the termination of benefits.

4. For a penalty in the amount of $110.00 per day for each day after April 16, 2004, that the defendants failed to timely deliver "other instruments under which the plan is operated" and a summary plan description.

5. For such other relief as this Court deems just and proper.

**PLAINTIFF CLAIMS TRIAL BY JURY ON ALL ISSUES TRIABLE BY JURY.**

ROBERT LUBOLD, JR.
By His Attorneys,

Jonathan M. Feigenbaum, Esq.
B.B.O. N#546686
Philips & Angley
One Bowdoin Square
Boston, MA 02114
Tel. No. : (617) 367-8787

L:\Lubo003\complaint.lubold.wpd